IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHADLY S. BALLARD,<br><br>    Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | 8:06CV718<br><br>MEMORANDUM AND ORDER |

  This matter is before the court on defendant Union Pacific's ("UP") motion for summary judgment pursuant to Fed. R. Civ. P. 56. Filing No. 71.[1] On or about September 19, 2006, plaintiff filed this case in the United States District Court for the District of Arkansas. The Arkansas court transferred the case to this court on November 17, 2006, as the case was incorrectly filed in Arkansas. Plaintiff sued alleging employment discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. §§ 1981 and 1983, and the First Amendment to the United States Constitution, as well as violations of Arkansas state employment laws.[2] For the reasons set forth herein, the court finds summary judgment should be granted.

## STANDARD OF REVIEW

  On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1]The defendants, Oliver Becenti, Johnny Adison, and Ted Tom, Jr., were previously dismissed without prejudice from this lawsuit. Filing No. 50.

[2]The plaintiff now agrees that he has no cause of action under the First Amendment, § 1983, § 1981 or Arkansas state employment laws. Consequently, the only cause of action before the court is under Title VII.

as a matter of law.  Fed. R. Civ. P. 56(c);  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor.  *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Facts are viewed in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must

be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 830 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## BACKGROUND

Ballard is a 37-year-old male hired by UP in 1992. He lives in Toquerville, Utah. He worked a variety of positions with UP during his tenure as an employee. During the time in question, Ballard was a Maintenance-of-Way ("MOW") employee and subject to a collective bargaining agreement. MOW employees maintain the railways and are at a given location for a few days up to six months before moving onto the next location.

In 2005, Ballard began working as a truck driver in Portland, Oregon. His crew then moved to Delta, Utah. Johnny Adison, Ted Tom, and Oliver Becenti also worked in this group with Ballard. Adison and Tom were laborers and Becenti an assistant foreman. None of these employees were supervisors, nor could they hire, fire or promote other employees. Ballard had not worked with these three employees prior to this time. Craig

3

Dannelly was Ballard's immediate supervisor. It is undisputed that on March 21, 2005, Becenti and Tom took Ballard under the arms, lifted him off the ground, and Adison thrust his hips into Ballard's groin area. When the three let Ballard down, he called them "sick bastards."

Ballard then reported the incident to Dannelly. Dannelly said he would speak to his supervisor, Talmage Daleabout. Ballard then contacted his union representative, Joe Dean, and then he called what he believed to be the Union Pacific Equal Employment Opportunity ("EEO") hotline.[3] Ballard indicated that he did not believe the three men were homosexual. Ballard did not return to work the following day.

UP then began an investigation. Dave Orrell, UP's Director of Construction, immediately traveled to the job site to conduct the investigation. Since Ballard did not show up for work, he was contacted by speaker phone. Following various interviews, Adison, Becenti, and Tom were charged with violating UP's Rule of Conduct 1.6 and suspended that day, March 22, 2005, pending a formal investigation. Rule 1.6 provides, in part, "Any act of hostility, misconduct, or willful disregard or negligence affecting the interests of the Company or its employees is sufficient cause for dismissal and must be reported. Indifference to duty, or to the performance of duty, will not be tolerated." Filing No. 73, Ex. 12. Ballard returned to work on March 28, 2005. Dannelly asked Ballard to return to work in Salt Lake City, Utah, to separate him from the same group where the harassment had occurred.

The collective bargaining agreement requires a fair and impartial hearing prior to dismissal within thirty days of the incident. Filing No. 73, Ex. 5, Rule 48(a). UP held a

---

[3] It turns out that Ballard actually called a phone number that was UP's Value Line which is used for reporting a violation or possible violation of the law or UP policies.

hearing on April 7, 2005. The collective bargaining agreement also provides that a decision will be rendered in writing within twenty days of the hearing. *Id.*, Rule 48(e). At the conclusion of the hearing, UP submitted the taped recordings to a transcriptionist. The transcriptionist failed to return the transcript within twenty days of the hearing. Consequently, UP did not render the disciplinary decision within twenty days as required by the collective bargaining agreement, and the three employees were allowed to return to work.

In addition, UP's EEO investigated the incident. On May 19, 2005, Yvonne Method-Walker of the EEO department concluded there was no violation of the union EEO policy. However, she sent a letter to Ballard telling him that counseling would be given to these three individuals. Filing No. 73, Exs. 15 and 16.

Thereafter, Ballard was told these three individuals would be returning to work. At this point they had been suspended for two months. Ballard then refused to come to work and requested Family Medical Leave Act ("FMLA") leave based on the fact that he was suffering from stress and anxiety. Orell informed Ballard that it would try to make sure this behavior did not happen again; Orell offered Ballard job duties on the same crew but with minimal contact with the three men who assaulted him; Orell offered Ballard the opportunity to bid another construction job away from the harassers; and UP also told Ballard that if he returned to work, he would be working directly with his manager regarding safety concerns. Ballard refused all of these options unless UP could guarantee that "there would be no possibility of their crossing paths again within the scope of their employment." Filing No. 73, Ex. 1, Ballard Dep. at 172:15-173:6; 177:1-15; Letter from Dr. Kramer. Ex. 18. UP told Ballard it could not guarantee that request, but it did offer him all of the above

options to minimize the contact. As it so happened, Adison bid off the crew within one week after returning to work; Becenti bid off that crew within one month; and Tom bid off that crew within six months. Ballard agrees that prior to this incident, none of the three had ever made any inappropriate references to him.[4]

Ballard remained on FMLA leave until November 22, 2005. At that time UP sent him a letter telling him that there was no reason for his continued disability leave. He was told to return to work. Filing No. 73, Ex. 20, Ex. A. He did not do so. On January 6, 2006, UP sent Ballard a letter giving him five days to report for work or he would be terminated. He did not report for work, and on January 26, 2006, UP terminated his employment. Filing No. 73, Ex. 22.

UP has an equal opportunity affirmative action policy. Filing No. 73, Ex. 23. The policy has a zero tolerance provision for harassment and discrimination and prohibits retaliation for reporting such behavior.

## DISCUSSION

### *Hostile Work Environment/Sexual Harassment*

In an employment discrimination case, the plaintiff must initially present a prima facie case to survive a motion for summary judgment. *Lidge-Myrtil v. Deere & Co.,* 49 F.3d 1308, 1310-11 (8th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973)). The employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does

---

[4] Apparently, however, Ballard believes he was harassed in 1993 when a co-employee attempted to "de-pants" him. Ballard said he reported this to his supervisor and his supervisor held a meeting and said the behavior must stop. Ballard Dep. 40:14-41:7. Ballard did not report any other harassment to his supervisors until 2005.

6

this, the burden of production shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on sex which creates a hostile or abusive working environment violates Title VII. *McCown v. St. John's Health System, Inc.,* 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of sexual discrimination based on a hostile work environment, an employee must show: (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment: (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. *Id; Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005).

For the sake of argument, the court will presume for this motion that Ballard belongs to a protected class under these circumstances. UP however, disputes whether Ballard meets his second and third requirements, i.e., that the alleged harassment was based on sex and was in fact sexual harassment. "The based on sex requirement forces a plaintiff to prove that [he] was the target of harassment because of [his] sex and that the offensive behavior was not merely non-actionable, vulgar behavior." *Pedroza,* 397 F.3d at 1068. "This distinction exists because 'Title VII does not prohibit all verbal or physical harassment in the workplace' and is not 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)). "Consequently, to succeed on a hostile work environment claim under Title VII, a plaintiff

7

must show that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Id.* (quotations omitted).

There are three recognized, though non-exhaustive, "routes by which a same-sex plaintiff can show that the conduct was based on sex." *McCown,* 349 F.3d at 543; *Pedroza,* 397 F.3d at 1068. A plaintiff can show that (1) the conduct was motivated by sexual desire; (2) the harasser was motivated by a general hostility to the presence of the same gender in the workplace; or (3) the harasser treated males and females in a mixed-sex workplace differently through direct comparative evidence. *Id.*

The court finds that Ballard's claim fails as a matter of law. Ballard has failed to produce any evidence that this was sexual harassment as opposed to vulgar behavior. It was a one-time incident. There is no evidence that this harassment was based on "sex." Accordingly, the court finds Ballard has not met his burden with respect to elements two and three of his prima facie case.

The court also finds that Ballard failed to produce any evidence with regard to the fourth element of his prima facie case. This claim fails as a matter of law because Balllard has failed to demonstrate that the alleged harassment was so severe or pervasive as to alter a term, condition, or privilege of his employment, thus, failing to prove the fourth element of his prima facie hostile environment claim. To clear the high threshold of actionable harm, Ballard, under this element, has to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotations omitted).

The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale,* 523 U.S. at 81 (citation omitted). "Thus, the fourth part of a hostile environment claim includes both [an] objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *See Duncan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002) (citations and quotations omitted). In determining whether or not the alleged harassment is severe and pervasive requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.* Again, this is an isolated incident. The only previous incident reported by Ballard occurred in 1993. There simply is no evidence that would allow a reasonable juror to conclude that the environment is hostile under Title VII. Accordingly, the court finds the plaintiff failed to meet his burden on this element.

With regard to the final element of the prima facie case, the court concludes that UP took immediate and corrective action in any regard. They investigated immediately; they suspended the three employees immediately; the employees were suspended for two months; the employees received counseling; and Ballard was offered a number of accommodations to return to his employment as well as given eight months of FMLA leave. Again, the court finds Ballard failed to produce evidence to meet his prima facie showing

9

that UP failed to take appropriate remedial action. Accordingly, for the reasons set forth herein, the court finds that summary judgment will be granted with regard to the sexual harassment/hostile environment claim.

### *Retaliatory Discharge*

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). To establish a prima facie claim of retaliation, the plaintiff has to show that: (1) he filed a charge of harassment or engaged in other protected activity; (2) his employer subsequently took an adverse employment action against him; and (3) the adverse action was casually linked to his protected activity. *See Cross v. Cleaver,* 142 F.3d 1059, 1071-72 (8th Cir. 1998). If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.*

There is no direct evidence of retaliation in this case. The parties agree that Ballard engaged in protected conduct when he reported the incident; and for the purposes of this motion, the court finds that Ballard suffered an adverse action, termination. However, there is simply no evidence once again that the protected conduct is in anyway related to his discharge ten months later. As previously stated herein, UP offered numerous alternatives to induce Ballard to return to work. He refused all of them. UP allowed him

to take ten months of leave under the FMLA before discharging him. At that time, not one of the three perpetrators were working the same location as Ballard. Ballard was asked to come back several times. He chose not to do so. There is no evidence that a retaliatory motive played any part in the adverse employment action. *Kipp v.Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (must be a causal link between adverse employment action and the retaliatory motive). There is simply no inference of causation that could be submitted to the jury for this retaliation claim. UP terminated Ballard because he failed to return to work. Accordingly, the court will likewise grant summary judgment with regard to the claim for retaliation.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 71, is granted. A separate judgment will be issued in accordance with this Memorandum and Order.

DATED this 5th day of May, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge